| LATA | Interstate Rate (per minute) | | Intrastate Rate (per minute) | |
|---|---|---|---|---|
| | Select | Basic | Select | Basic |
| 822 | 0.0916 | 0.0916 | 0.0913 | 0.0913 |
| 832 | 0.1242 | 0.1242 | 0.1617 | 0.1617 |
| 834 | 0.0761 | 0.0761 | 0.0862 | 0.0862 |
| 870 | 0.0878 | 0.0878 | 0.0878 | 0.0878 |
| 871 | 0.1111 | 0.1111 | 0.1111 | 0.1111 |
| 920 | 0.0309 | 0.0609 | 0.0461 | 0.0488 |
| 921 | 0.0692 | 0.0692 | 0.0697 | 0.0697 |
| 922 | 0.0249 | 0.0648 | 0.0692 | 0.1070 |
| 923 | 0.0818 | 0.0818 | 0.1240 | 0.1240 |
| 924 | 0.0727 | 0.0727 | 0.1207 | 0.1207 |
| 927 | 0.0527 | 0.0527 | 0.0635 | 0.0635 |
| 928 | 0.0254 | 0.0254 | 0.0778 | 0.0778 |
| 929 | 0.0736 | 0.0736 | 0.1259 | 0.1259 |
| 932 | 0.0736 | 0.0736 | 0.1112 | 0.1112 |
| 937 | 0.0358 | 0.0358 | 0.0383 | 0.0383 |
| 938 | 0.0765 | 0.0765 | 0.0711 | 0.0711 |
| 939 | 0.0261 | 0.0261 | 0.0869 | 0.0869 |
| 949 | 0.0801 | 0.0801 | 0.1344 | 0.1344 |
| 951 | 0.0946 | 0.0946 | 0.1766 | 0.1766 |
| 952 | 0.0228 | 0.0228 | 0.0843 | 0.0843 |
| 953 | 0.0487 | 0.0487 | 0.1163 | 0.1163 |
| 956 | 0.0683 | 0.0683 | 0.1548 | 0.1548 |
| 958 | 0.1062 | 0.1062 | 0.1300 | 0.1300 |
| 960 | 0.0918 | 0.0918 | 0.1044 | 0.1044 |
| 961 | 0.0901 | 0.0901 | 0.1426 | 0.1426 |
| 973 | 0.0210 | 0.0210 | 0.0431 | 0.0431 |
| 974 | 0.0620 | 0.0620 | 0.0717 | 0.0717 |

| LATA | Interstate Rate (per minute) | | Intrastate Rate (per minute) | |
|---|---|---|---|---|
| | Select | Basic | Select | Basic |
| 976 | 0.0977 | 0.0977 | 0.0876 | 0.0876 |
| 977 | 0.1146 | 0.1146 | 0.0970 | 0.0970 |
| 978 | 0.0903 | 0.0903 | 0.0823 | 0.0823 |
| 980 | 0.0812 | 0.0812 | 0.0892 | 0.0892 |
| 981 | 0.0995 | 0.0995 | 0.1502 | 0.1502 |

**B. Rate Schedule B (international)**

1. International Usage Rates. International Usage Rates for AT&T Dedicated Outbound Wholesale Service are set forth in the International Access Rate Schedules. The International Rate Schedules are set forth in the following file (the "International Rate File"). CUSTOMER acknowledges it has received the International Rate File from AT&T prior to its execution of this Agreement.

| | |
|---|---|
| International Rate File Name: | LOCUS DOWS Intl Rates 08-11-03.xls |

Although the rates in the International Rate File are set forth as per minute rates, the International Usage Rates for AT&T Dedicated Outbound Wholesale Service (for all countries except Mexico) are billed with an initial increment of eighteen seconds, and additional increments of six seconds. The rate for the initial 18 second period or fraction thereof will be 30% of the per minute rate set forth in the International Rate File and the rate for each additional six second increment or fraction thereof will be 10% of the per minute rate. A separate Usage Rate may apply when AT&T Dedicated Outbound Wholesale Service is used to call a foreign mobile telephone number or to make an international audiotext call.

For Mexico: (1) the per minute rate applies for each minute or fraction thereof, (2) the standard rate applies from 7:00 AM to 7:00 PM, for all days of the week including holidays, and the economy rate applies for all other time periods, and (3) when a call spans more than one rate period, the rate applicable for the period in which the call originated applies to the entire duration of the call.

**10. AT&T Commercial Satellite Mobile Service No. 1.**

The following Usage Sensitive Rates apply in lieu of the AT&T Commercial Satellite Mobile Service No. 1 Usage Sensitive Rates specified in AT&T Tariff F.C.C. No. 1, Section 6.39.3.A, as amended from time to time. No discounts apply.

| Access Code | Usage Sensitive Rate Per Minute |
|---|---|
| 8816 | $ 1.597 |
| 8817 | $ 1.597 |

11. **<u>AT&T Maritime Mobile Service.</u>**

**For Dial Station and Customer Dialed Calling Card Station Calls, the following Usage Rates apply in lieu of the AT&T Maritime Mobile Service Usage Rates specified in AT&T Tariff F.C.C. No. 1, Section 6.26.2.C., as amended from time to time. No discounts apply**

1. **<u>INMARSAT A</u>: Atlantic Ocean East, Atlantic Ocean West, Indian Ocean and Pacific Ocean**

| Period | Peak Period | Off-Peak Period |
|---|---|---|
| Initial Period - 1 Minute | $5.555 | $5.555 |
| Add'l Period - 1 Minute | $5.555 | $5.555 |

2. **<u>INMARSAT B</u>: Atlantic Ocean East, Atlantic Ocean West, Indian Ocean and Pacific Ocean**

| Period | Peak Period | Off-Peak Period |
|---|---|---|
| Initial Period - 1 Minute | $2.310 | $2.310 |
| Add'l Period - 1 Minute | $2.310 | $2.310 |

3. **<u>INMARSAT M</u>: Atlantic Ocean East, Atlantic Ocean West, Indian Ocean and Pacific Ocean**

| Period | Peak Period | Off-Peak Period |
|---|---|---|
| Initial Period - 1 Minute | $2.627 | $2.627 |

| Period | Peak Period | Off-Peak Period |
|---|---|---|
| Add'l Period - 1 Minute | $2.627 | $2.627 |

4. **INMARSAT Mini M: Atlantic Ocean East, Atlantic Ocean West, Indian Ocean and Pacific Ocean**

| Period | Peak Period | Off-Peak Period |
|---|---|---|
| Initial Period - 1 Minute | $2.006 | $2.006 |
| Add'l Period - 1 Minute | $2.006 | $2.006 |

5. **INMARSAT Skyphone: Atlantic Ocean West, Pacific Ocean**

| Period | Peak Period | Off-Peak Period |
|---|---|---|
| Initial Period - 1 Minute | $9.530 | $9.530 |
| Add'l Period - 1 Minute | $9.530 | $9.530 |

---

End of Attachment

# AT&T Data Service Terms and Pricing Attachment

CUSTOMER Name (Full Legal Name): Locus Telecommunications, Inc._

| | | |
|---|---|---|
| Date of Execution of Master Agreement: | October 9, 2003 | (by CUSTOMER) |
| | MA - 10/15/03 | (by AT&T) |

1. **Services Provided.** AT&T will provide the following Services to CUSTOMER under this Attachment and pursuant to the terms of the Master Agreement and the applicable provisions of the AT&T Service Guide.

1.1. AT&T Private Line Services.

1.2. AT&T Local Channel Services.

1.3. AT&T International Satellite Services.

2. **Term.** The Term of this Attachment consists of a Full Service Period of **36** months and a Ramp Down Period of up to 12 months. CUSTOMER may elect to extend the Full Service Period for an additional 12 months by providing notice of such election to AT&T at least 60 days prior to the end of the original Full Service Period. Upon expiration of the Term, this Attachment will remain in effect on a month-to-month basis, and all rates and charges will be subject to change by AT&T upon thirty days' notice.

2.1. Rate Effective Date. The rates, terms and conditions of this Attachment are effective as of the date on which this Attachment is made part of the Agreement (i.e., on the date the Agreement is initially executed by both parties or, if this Attachment is not part of the Agreement as initially executed, on the date the Agreement is thereafter amended to include this Attachment) which date is referred to as the "Rate Effective Date".

2.2. Full Service Period; CISD. The Full Service Period begins on the first day of the first full bill cycle in which Service is provided under this Attachment, which day is referred to as the Customer's Initial Service Date (CISD). If different Services provided under this Attachment have different billing cycles, the billing months will be staggered, and the Full Service Period with respect to each Service will begin on the first day of the applicable bill cycle following the CISD. For each Service, however, the Full Service Period will begin less than one month after the CISD.

2.3. Component Term. A twelve-month Component Term applies for each Interoffice Channel (IOC) and Local Channel ordered under this Attachment. The Component Term for each such component begins on the date AT&T completes installation of the component.

2.4. Ramp-Down Period. The Ramp-Down Period begins on the first day after the end of the Full Service Period, and ends on the last day of the last remaining Component Term. CUSTOMER may not submit new service orders under this Agreement during the Ramp-Down Period. During the Ramp-Down Period, all rates and charges (other than rates and charges applicable to channels with an unexpired Component Term) are subject to change by AT&T upon thirty days' notice.

3. **Minimum Revenue Commitments**. The following Minimum Revenue Commitments apply under this Attachment. For each Minimum Revenue Commitment, CUSTOMER commits that the Eligible Charges it incurs during each Commitment Period will equal or exceed the amount of the commitment. If CUSTOMER fails to meet any Minimum Revenue Commitment in a Commitment Period, then CUSTOMER will pay a Shortfall Charge equal to the difference between the Minimum Revenue Commitment and the amount of Eligible Charges for that Minimum Revenue Commitment incurred during the Commitment Period.

3.1. **Minimum Monthly Revenue Commitment (MMRC)**

3.1.1. The MMRC is $0.00. Each month of the Full Service Period is a Commitment Period. There is no MMRC during the Ramp-Down Period.

3.1.2. The MMRC Eligible Charges consist of the gross Monthly Recurring Charges, prior to the application of any discounts or credits, for the Services provided under this Attachment.

4. **Rates and Charges.** The rates and charges for the Services provided under this Attachment are as provided in the Service Guide, except as specified in this Attachment. AT&T reserves the right to change from time to time the rates for Services under this Agreement, regardless of any provisions that would otherwise stabilize rates or limit rate increases, to reasonably reflect charges or payment obligations imposed on AT&T stemming from an order, rule or regulation of the Federal Communications Commission or a court of competent jurisdiction, concerning universal service fund ("USF") charges, or other governmental charges or fees imposed in connection with the provision of Services.

4.1. **AT&T Private Line Services – Inter Office Channels.** The following monthly charges apply for the listed domestic services in lieu of the Inter Office Channel (IOC) monthly charges applicable under the Service Guide. The monthly charge varies based on the IOC rate mileage. For an IOC with rate mileage of 100 miles or less, the monthly charge is a fixed charge. For an IOC with rate mileage of more than 100 miles, the monthly charge is the product of the per mile charge set forth in the following chart (determined based on IOC rate mileage), times the rate mileage of the IOC.

4.1.1. AT&T Private Line SONET OC12 Service

| IOC Rate Mileage | Fixed Monthly Charge | Per Mile Charge |
|---|---|---|
| 1-100 | $14,952.32 | $0.00 |
| 101-300 | $0.00 | $114.99 |
| 301-500 | $0.00 | $88.88 |
| 501-1000 | $0.00 | $79.75 |
| 1001+ | $0.00 | $56.25 |

4.1.2. ACCUNET SONET T155 Service

| IOC Rate Mileage | Fixed Monthly Charge | Per Mile Charge |
|---|---|---|
| 1-100 | $5,031.75 | $0.00 |
| 101-300 | $0.00 | $34.68 |
| 301-500 | $0.00 | $28.22 |
| 501-1000 | $0.00 | $26.68 |
| 1001+ | $0.00 | $19.29 |

4.1.3. ACCUNET T45 Service

| IOC Rate Mileage | Fixed Monthly Charge | Per Mile Charge |
|---|---|---|
| 1-100 | $2,141.61 | $0.00 |
| 101-300 | $0.00 | $16.37 |
| 301-500 | $0.00 | $15.53 |
| 501-1000 | $0.00 | $14.03 |
| 1001+ | $0.00 | $12.32 |

4.1.4. ACCUNET T1.5 Service

| IOC Rate Mileage | Fixed Monthly Charge | Per Mile Charge |
|---|---|---|
| 1-100 | $397.81 | $0.00 |
| 101-300 | $0.00 | $2.44 |
| 301-500 | $0.00 | $1.99 |
| 501-1000 | $0.00 | $1.68 |
| 1001+ | $0.00 | $1.56 |

4.2. **AT&T Private Line Services - Office Functions.** The following monthly charges apply for the listed services in lieu of the Office Function monthly charges applicable under the Service Guide.

| Office Function | Monthly Recurring Charge |
|---|---|
| *ACCUNET* T1.5 Service M-24 Multiplexing | $117.00 |
| *ACCUNET* T45 Service M-28 Multiplexing | $576.00 |

5. **Discounts.** The following monthly discounts are the only discounts for the Services provided under this Attachment.

5.1. The following discounts will be applied each month to the undiscounted monthly charges for the DSVPP-eligible service components (as defined in the Service Guide) for the following Services provided under this Attachment:

| Service | Discount |
|---|---|
| AT&T Private Line SONET OC12 Services | 0.00% |
| *ACCUNET* SONET T155 (OC3) Service, International ACCUNET T155 Service – Canada, and International ACCUNET T155 Service – Mexico | 0.00% |
| *ACCUNET* T45 Service, International ACCUNET T45 Service – Canada, and International ACCUNET T45 Service – Mexico | 0.00% |
| *ACCUNET* T1.5 Service, International ACCUNET T1.5 Service – Canada, and International ACCUNET T1.5 Service – Mexico | 0.00% |
| *ACCUNET* Fractional T45 Services | 50% |

| Service | Discount |
|---|---|
| *ACCUNET* Spectrum of Digital Services (ASDS), International *ACCUNET* Spectrum of Digital Services (IASDS) – Canada, and International *ACCUNET* Spectrum of Digital Services (IASDS) – Mexico (64 kbps and below) | 25% |
| *ACCUNET* Spectrum of Digital Services (ASDS), International *ACCUNET* Spectrum of Digital Services (IASDS) – Canada, and International *ACCUNET* Spectrum of Digital Services (IASDS) – Mexico (128 kbps and above) | 25% |
| International T155 Service – Overseas | 60% |
| International *ACCUNET* T45 Service-Overseas | 60% |
| International *ACCUNET* 2.048 Mbps Service-Mexico | 50% |
| International Full Channel Service – Overseas | 60% |
| International *ACCUNET* Digital Service (IADS) | 60% |
| AT&T International Satellite Shared Earth Station Service | 30% |
| *ACCUNET* Generic Digital Access (AGDA) Service | 20% |
| Voice Grade (VG) Local Channel Service | 20% |
| AT&T Terrestrial 1.544 Mbps Local Channel Service | 35% |
| AT&T Terrestrial 45 Mbps Local Channel Service | 25% |

6. **Credits and Waivers.** The following credits and waivers are the only credits and waivers that apply to the Services provided under this Attachment. No other promotions, credits or waivers apply.

6.1. **Installation Charge Waiver.** AT&T will waive the Installation Charges associated with the installation of the following service components provided under this Attachment. Each service component installed subject to an Installation Charge waiver is subject to a twelve-month minimum in-service period. If any service component is disconnected prior to the end of the minimum in-service period, CUSTOMER will be billed for the Installation Charges previously waived for that service component, prorated based on the percentage of the minimum in-service period for which the service component was kept in service.

6.1.1. DSVPP-eligible service components (as defined in the Service Guide)

6.2. **Monthly Charge Waiver.** AT&T will waive the monthly charges for the following DSVPP-eligible service components:

6.2.1. Access Connections associated with IOCs for the following Services:

6.2.1.1. AT&T Private Line SONET OC12 Service

6.2.1.2. ACCUNET SONET T155 (OC3) Service, International ACCUNET T155 Service – Canada, and International ACCUNET T155 Service – Mexico

6.2.1.3. ACCUNET T45 Service, International ACCUNET T45 Service – Canada, and International ACCUNET T45 Service – Mexico

6.2.1.4. ACCUNET T1.5 Service, International ACCUNET T1.5 Service – Canada, and International ACCUNET T1.5 Service – Mexico

6.2.2. Access Coordination Function (ACF) associated with Local Channels for the following Services (if a Local Channel is disconnected before it has been in service for twelve months, the CUSTOMER will be billed for the previously waived monthly charges for the ACF associated with the disconnected Local Channel):

6.2.2.1. AT&T Terrestrial T45 Mbps Local Channel Service

6.2.2.2. AT&T Terrestrial T1.544 Mbps Local Channel Service

6.2.2.3. ACCUNET Generic Digital Access (AGDA) Service

7. **Classifications, Practices and Regulations.** Except as otherwise provided in this Attachment, the rates and regulations that apply to the Services provided under this Attachment are as set forth in the Service Guide.

8. **Termination Charge.** The following provision applies in lieu of any Discontinuance With or Without Liability provisions specified in the Service Guide.

8.1. If CUSTOMER terminates this Attachment or the Service provided under this Attachment prior to the end of the Term (other than as the result of a material breach by AT&T), or if AT&T terminates this Attachment or the Service provided under this Attachment prior to the end of the Term due to CUSTOMER's material breach of the Agreement, CUSTOMER will be billed a Termination Charge. The Termination Charge will be an amount equal to 50% of the unsatisfied Minimum Revenue Commitment(s) for the Commitment Period(s) in which the termination occurs, plus 50% of the Minimum Revenue Commitments for each Commitment Period remaining in the Term. In addition, CUSTOMER will be billed (1) any applicable Component Termination Charges, and (2) an amount equal to the sum of any credits specified in this Attachment.

8.2. If CUSTOMER discontinues a service component prior to the end of the applicable Component Term (other than as a result of a material breach by AT&T), or if AT&T discontinues a service component prior to the end of the Component Term due to CUSTOMER's material breach of the Agreement, CUSTOMER will be liable for a Component Termination Charge equal to 100% of the Monthly Recurring Charges for each month remaining in the applicable Component Term. No Component Termination Charge will apply during the Full Service Period if an IOC is replaced with the same type of component, with a higher speed. The replacement component must between the same two points. In all cases, the replacement component will be subject to a new Component Term of twelve months.

---

End of Attachment

## AT&T Dedicated Outbound Wholesale Service – Service Description

**1. Service Description.**

AT&T Dedicated Outbound Wholesale Service (DOWS) is a virtual private network service that permits interLATA outward calling from AT&T DOWS Central Offices to domestic and international locations. AT&T DOWS provides only basic calling capabilities. AT&T DOWS calls are dialed and completed without the assistance of an AT&T operator, and do not include:

- Calling Card calls
- Person-to-person calls
- Collect calls
- Third-number billed calls
- Operator-assisted calls
- Conference calls
- Calls to 500, 700, 8yy, 900 or other Special Service Codes
- Domestic Intrastate IntraLATA, local toll or local calls
- INMARSAT and AT&T Maritime Service calls or other similar calls

A. **Other Call Types.** Types of calling not provided hereunder, but nonetheless routed over the AT&T DOWS virtual private network platform, shall be billed at the applicable AT&T F.C.C. or state tariff rates. For example, domestic outbound intrastate intraLATA, local toll, and local calls that are routed over the AT&T DOWS platform shall be billed at the rates specified in the applicable AT&T state tariffs for virtual private network service (e.g., SDN).

B. **IXC Switch Access Only.** AT&T DOWS is provided only for calls that originated over dedicated access between a CUSTOMER IXC Switch and the AT&T DOWS Central Office (a DS-1 interface is required). CUSTOMER is responsible for obtaining such dedicated access. AT&T Access Connections and Local Channel Services are available for use in conjunction with AT&T DOWS, as specified in the Service Terms and Pricing Attachment.

**2. Rate Determination.**

A. **Domestic Usage Rate Determination.** The domestic Usage Rates for AT&T DOWS varies by LATA and Operating Company Number ("OCN") associated with the NPA-NXX of the dialed number, and based on whether the call is interstate or intrastate. The OCN associated with the NPA-NXX of the dialed number will be determined using the Terminating Points Master records maintained by Telcordia Technologies (formerly known as Bellcore). The intrastate rates apply if the call originates and terminates within the same State; the interstate rates apply if the call originates in one State (or the District of

Columbia) and terminates at a domestic location that is not in the same State. The originating state is the location of the CUSTOMER IXC Switch from which the AT&T DOWS call originates. The terminating state is the location of the called station.

**3. General Regulations.**

AT&T DOWS is subject to the following General Regulations set forth in AT&T Tariff F.C.C. No. 1, as amended from time to time, as applicable to Long Distance Message Telecommunications Service (LDMTS):

- Section 2.1.6. (Availability of LDMTS)
- Section 2.2.2. (Non-Voice Transmission)
- Section 2.5.13.C. (Rounding to the Nearest Cent)
- Section 2.7 (Connections)
- Section 2.8.4. (Determining the Chargeable Time of a Call)
- Section 2.8.6. (Other Line Charges)

**4. Definitions.**

**A.** **AT&T DOWS Central Office** - an AT&T Central Office at which AT&T SDN Service is available.

**B.** **CUSTOMER IXC Switch** - a telecommunications switch with the following characteristics: (1) it is used for the transmission of calls that are routed by a Local Exchange Carrier to the CUSTOMER IXC Switch using Feature Group D Access, or a functional equivalent; (2) it is capable of interconnecting circuits or transferring calling between circuits; (3) it has a maximum capacity of not less than 100,000 access lines; and (4) it is used by CUSTOMER to provide Common Carrier service to end users.

---

End of Attachment

LOCUS TELECOMMUNICATIONS, INC

## XVIII. NOTICES

All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be deemed to be delivered on the earlier of: (a) the date of actual receipt; (b) three days after the date of mailing, by first class mail, duly addressed and with proper postage to the last known place of business of either party; or (c) the day after being sent via a nationally recognized overnight courier service such as Federal Express. Notices will be delivered as follows:

| | |
|---|---|
| **Locus Telecommunications, Inc.** | High Vista Enterprises, Inc. |
| 111 Sylvan Avenue | Address: > P.O. BOX 802108 > Aventura ,Florida 33280-2108 |
| Englewood Cliffs, NJ 07632<br>Attn: Carrier Operations | Attn: |
| Phone: 201-585-3600 | Phone: |
| Fax: 201-947-4082 | Fax: |

**In Witness Whereof,** and intending to be legally bound hereby, the Parties have caused this Reciprocal Carrier Services Agreement to be executed by their authorized representatives on the date written below.

| | |
|---|---|
| **Locus Telecommunications, Inc.** | **Company: High Vista Enterprises, Inc.** |
| By: *[signature]* | By: *[signature]* |
| Name: David Siegel | Name: Sabino Mariano Chavez |
| Title: Director - Carrier Operations | Title: Presidente |
| Date: 11-21-05 | Date: 11-17-05 |



Initials

# MESSAGE CONFIRMATION

11/26/2003 11:22
ID=LOCUS TELECOMMUNICATINS,INC

| DATE | S,R-TIME | DISTANT STATION ID | MODE | PAGES | RESULT | |
|---|---|---|---|---|---|---|
| 11/26 | 01'36" | +34952176757 | TX | 10 | OK | 0000 |

11/26/2003 11:20 LOCUS TELECOMMUNICATINS,INC → 01134952176757 NO.273 D01
25/11/2003 17:27 +34952176757 IVY SOLUTIONS PAG. 09/10

## Carrier Services Agreement

### ORDER INFORMATION SECTION

**Initial Term:** One (1) year

**Destination(s):**

See attached Schedule "A"

**Payment/Security Deposits:**

| | |
|---|---|
| Payment by Wire Transfer Required | Yes |
| Estimated Usage Payments Required | Yes/No |
| Letter of Credit Required............. | Yes/No |
| Security Deposit Amount:........... | $TBD (Non-Interest bearing Cash Deposit) |
| Billing Period ............................ | Weekly (Monday - Sunday) |
| Payment Due Date:.. ................. | Three (3) days from receipt of invoice |

**Minimum Monthly Commitment:**

# STARTEC *CARRIER SERVICES AGREEMENT*

**THIS AGREEMENT** (the "Agreement") is made this 12th day of APRIL, 1999, by and between **STARTEC Global Communications Corporation**, a Maryland corporation, with its principal office at 10411 Motor City Drive, Bethesda, MD 20817, U.S.A. ("STARTEC") and LOCUS, a NEW YORK STATE corporation with its principal office at 2160 NORTH CENTRAL RD FORT LEE, NJ 07024 (**"Customer"**). STARTEC and Customer are "Parties" hereto.

STARTEC agrees to provide switched international telecommunications services and other associated services (collectively "Service"), as described herewith, to Customer on the following terms and conditions, and Customer agrees to accept Service subject to the specific terms and charges set forth in the Annexure(s) attached hereto and pursuant to the terms of this Agreement.

1. **CONFIDENTIALITY:** During the Term and for one (1) year thereafter, neither Party shall disclose any terms of this Agreement, including pricing, or "Confidential Information" of the other Party. For purposes of this Agreement, "Confidential Information" shall mean information in written or other tangible form specifically labeled as such when disclosed by a Party. Confidential Information transmitted orally shall be identified as such at the time of its disclosure. Confidential Information shall remain the property of the disclosing Party. A Party receiving Confidential Information shall: (i) use or reproduce such information only when necessary to perform this Agreement; (ii) provide at least the same care to avoid disclosure or unauthorized use of such information as it provides to protect its own Confidential Information; (iii) limit access to such information to its employees or agents who need such information to perform this Agreement; and (iv) return or destroy all such information, including copies, after the need for it has expired, upon request of the disclosing Party, or upon termination of this Agreement. Notwithstanding anything to the contrary contained herein, a Party shall be allowed to disclose Confidential Information pursuant to judicial or governmental order or if otherwise required to do so by law.

2. **TERM:** The term of this Agreement shall be a minimum one (1) year from the last date of signature. The Agreement shall continue thereafter, in full force and effect, until canceled by either party giving sixty (60) days written notice to the other Party. Service will be discontinued the first business day of the third month after such notice of termination.

3. **RELATIONSHIP TO PARTIES:** Neither this agreement nor the provision of Service creates a joint venture, partnership or agency between STARTEC and Customer.

4. **USE OF NAME AND MARKS:** This Agreement confers no right to use the name, service marks, trademarks, copyrights, patents of either Party except as expressly provided herein. Neither Party shall take any action which would compromise the registered copyrights or service marks of the other.

5. **LEGAL COMPLIANCE: REMEDIES FOR NON-COMPLIANCE:** Customer represents and warrants that it has obtained all licenses, approvals and/or regulatory authority necessary to operate as contemplated herein.

6. **CUSTOMER RESPONSIBILITIES:** Customer shall comply with STARTEC's network interface procedures when it orders its own access facilities. STARTEC agrees to promptly provide Customer with such network interface procedures.

7. **SERVICE ACTIVATION:** STARTEC will use reasonable efforts to provide Service within 30 days, following execution of the applicable Annexure(s), or the requested delivery date, whichever is later.

8. **PRICING:** Pricing is pursuant to the applicable Annexure(s). STARTEC reserves the right to change the pricing, upon seven (7) days prior written notice.

9. **PAYMENTS FOR SERVICE:**

9.1 Customer shall pay STARTEC for Service pursuant to the terms of this Agreement.

9.2 STARTEC will invoice Customer monthly for Service provided hereunder. Invoices shall be due and payable upon receipt. Undisputed charges for Service that are not paid within 30 days after Customer's receipt of the invoice shall be past due. Interest will be charged on past due amounts beginning the 31st day following Customer's receipt of the invoice at a rate equal to the lesser of 18% per annum or the maximum rate allowed by law.

9.3 Customer will provide STARTEC with a valid tax exemption form to exempt Customer, under applicable law, from taxes that would otherwise be paid by Customer. STARTEC will invoice Customer for taxes (other than income taxes payable by STARTEC) that are not covered by tax exemption certificate properly filed with STARTEC.

9.4 If Customer, in good faith, disputes any invoiced amount, it shall submit to STARTEC within 30 days following receipt of the invoice, full payment of the undisputed portion of the invoice and written documentation identifying and substantiating the disputed amount. If the Parties, in good faith, cannot resolve the dispute within a reasonable period of time, then the dispute shall be settled by arbitration pursuant to Paragraph 16.

9.5 The customer shall be solely responsible for billing and collecting from its customers. Under no circumstances shall STARTEC be responsible for fraudulent, unbillable calls, credits given by the Customer and bad debts incurred by the Customer.

10. **PAYMENT SECURITY:** Provision of Service is contingent on credit approval by STARTEC. Upon request by STARTEC, Customer shall provide STARTEC with financial circumstances. If Customer's financial circumstance or payment history is or becomes unacceptable to STARTEC, then STARTEC may require a deposit, irrevocable letter of credit or other form of security acceptable to STARTEC within five (5) days following STARTEC's request.

11. **INDEMNIFICATION:** Each Party (as "Indemnitor") shall indemnify, defend and hold harmless the other Party (as "Indemnitee") from and against any and all liabilities, costs, damages, fines, assessments, penalties and expenses (including reasonable attorney's fees) resulting from (a) breach of any provision in this Agreement by Indemnitor, it employees or agents, arising out of the Indemnitor's performance hereunder.

Customer shall indemnify, defend and hold STARTEC harmless from and against any and all liabilities, costs, and damages (including reasonable attorney's fees) resulting from any claim arising out of libel, slander, or patent or trademark infringement arising from the combination or use of Service with Customer provided service or facilities; or Customer's marketing, advertising, sales or promotional activities.

12. **LIMITATION OF LIABILITY:** IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR EXEMPLARY DAMAGES, INCLUDING WITHOUT LIMITATION LOSS OF REVENUE, LOSS OF PROFITS, LOSS OF CUSTOMERS, CLIENTS OR GOODWILL ARISING IN ANY MANNER FROM THIS AGREEMENT AND THE PERFORMANCE OR NON-PERFORMANCE OF BUSINESS HEREUNDER.

THE LIABILITY OF STARTEC WITH RESPECT TO THE INSTALLATION (INCLUDING DELAYS THEREOF), PROVISION, TERMINATION, MAINTENANCE, REPAIR, INTERRUPTION, OR RESTORATION, OF ANY SERVICE OR FACILITIES OFFERED UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO THE CHARGE APPLICABLE UNDER THIS AGREEMENT TO THE PERIOD DURING WHICH SERVICES WERE AFFECTED. FOR THOSE SERVICES WITH MONTHLY RECURRING CHARGES, THE LIABILITY OF STARTEC IS LIMITED TO AN AMOUNT EQUAL TO THE PROPORTIONATE MONTHLY RECURRING CHARGES FOR THE PERIOD DURING WHICH SERVICE WAS AFFECTED.

13. **WARRANTIES:** STARTEC WILL USE REASONABLE EFFORTS UNDER THE CIRCUMSTANCES TO MAINTAIN ITS OVERALL NETWORK QUALITY. THE QUALITY OF SERVICE PROVIDED HEREUNDER SHALL BE CONSISTENT WITH OTHER COMMON CARRIER INDUSTRY STANDARDS, GOVERNMENT REGULATIONS AND SOUND BUSINESS PRACTICES. STARTEC MAKES NO OTHER WARRANTIES ABOUT THE SERVICE PROVIDED HEREUNDER, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

14. **TERMINATION FOR CAUSE**
14.1 A Party may terminate this Agreement upon the other Party's failure to cure any of the following within 30 days following written notice thereof: (a) the (i) insolvency, corporate reorganization, arrangement with creditors, receivership or dissolution of the other Party; or (ii) institution of bankruptcy proceedings by or against the other Party; (b) assignment or attempted assignment of the Agreement or any interest therein, except as permitted by Paragraph 19 hereof; (c) change in control of the defaulting Party without the other Party's prior written consent, which consent shall not be unreasonably withheld; (d) a final order by a government entity with appropriate jurisdiction that a Service or the relationship hereunder is contrary to law or regulation; or (e) breach of any provision herein not otherwise referred to in this Paragraph 14.

14.2 STARTEC may terminate this Agreement with seven (7) days notice if Customer breaches a provision of Paragraph nine (9), ten (10) or eleven (11).

14.3 Upon termination of this Agreement a Party may recover from the other all sums it is owed at the time of termination.

15. **TERMINATION FOR CONVENIENCE:** Customer may terminate this Agreement for convenience with 60 days advance written notice, provided that all early termination requirements stipulated in the Annexure(s) are met.

16. **ARBITRATION:** Any dispute arising out of or relating to the Agreement will be finally settled by arbitration in accordance with the rules of the American Arbitration Association. The arbitration will be governed by the United States Arbitration Act, 9 U.S.C. Sec. I, et. seq., and judgment upon the award rendered by the arbitrator(s) may be entered by any court with jurisdiction. The arbitration will be held in the Washington, DC metropolitan area.

17. **FORCE MAJEURE:** Neither Party shall be liable for any delay or failure in performance of any part of this Agreement, other than for any delay or failure in an obligation to pay money, to the extent such delay or failure is caused by fire, flood, explosion, accident, war, strike, embargo, governmental requirement, civil or military authority, Act of God, inability to secure materials or labor or any other causes beyond their reasonable control. Any such delay or failure shall suspend this Agreement until the Force Majeure ceases and the term shall be extended by the length of the suspension.

18. **NOTICES:** Notices, requests or other communications (excluding invoices) hereunder shall be in writing. If mailed then shall be sent certified, if by fax then, with acknowledgement from receiving Party.
Fax and Address:

**If to STARTEC:**

STARTEC Global Communications Corp.
10411 Motor City Drive
Bethesda, MD 20817 USA
**Attention: DHRUVA D. KUMAR**
**V.P. Global Carrier Services**
Tel.: (301) 365-8959 x 1422; (301) 767-1422
Fax: (301) 365-1488

**If to Customer:** LOCUS

LOCUS
2160 N. CENTRAL RD.
FORT LEE, NJ 07024

Attention: DILLON KIM
Tel.: (201) 947-6100 x 124
Fax: (201) 947-6108

19. **ASSIGNMENT:** Neither this Agreement nor any right or obligation hereunder may be assigned or delegated to any other entity without the prior written consent of the other Party, which consent shall not be unreasonably withheld.

20. **RULES OF CONSTRUCTION:** No rule of construction requiring interpretation against the draftsman shall apply in the interpretation of this Agreement.

21. **ENTIRE AGREEMENT:** This Agreement, together with the attached Annexure(s), represents the entire agreement of the Parties with respect to the subject matter hereof and supersedes all other agreements (written or oral) between the Parties relating to the Service.

22. **MODIFICATION OF AGREEMENT:** This Agreement, including its Annexure(s), may be amended, modified, or supplemented only by a separate written document executed by authorized representatives of both Parties. Rates (prices) issued within the parameters of section eight (8) require only the signature of an authorized representative of STARTEC and do not require counter-signature from Customer.

23. **WAIVER OF TERMS:** No term or provision herein shall be waived, and no breach or default excused, unless such waiver or consent is in writing and signed by the Party to which it is attributed. No consent by a Party to, or waiver of, a breach or default by the other, whether express or implied shall constitute a consent to, or waiver of, any subsequent breach or default.

24. **PARTIAL INVALIDITY:** If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render the Agreement unenforceable, but rather the Agreement shall be construed as if not containing the invalid or unenforceable provision. However, if such provision is an essential element of this Agreement, the Parties shall promptly attempt to negotiate a substitute therefor.

25. **CUMULATIVE REMEDIES:** Except as otherwise provide herein, the remedies provided for in this Agreement are in addition to any other remedies available at law or in equity.

26. **GOVERNING LAW:** This Agreement shall be governed and construed in accordance with the laws of the State of Maryland, and the Parties irrevocably agree to the exclusive jurisdiction of the courts of the State of Maryland.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year last written below.

| | |
|---|---|
| **Customer** LOCUS | **STARTEC Global Communcations Corp.** |
| /s/ [signature] | /s/ [signature] Akbar A. Merchant |
| Name: JASON CHON | Name: ~~**Dhruva D. Kumar**~~ A.V.P. Global Carrier Services |
| Title: PRESIDENT | Title: **V.P. Global Carrier Services** |
| Date: 4/12/99 | Date: 15 April '99 |

# A-3

**DOMESTIC CARRIERS**

Contract Excerpts on Responsibility for Taxes

**Contract Title**: Telecommunications Services Agreement
**Vendor Party**: Latino Communications Corp., Delaware corporation
**Dates**: July 2003

**Tax Provisions**:

Sec. 3(a) – Locus shall pay for the Services … plus any applicable taxes for which Locus has not provided an exemption certificate.

Sec. 14 – Taxes and Charges. The Parties acknowledge and understand that all charges … for the Services provided pursuant to this Agreement are exclusive of sales, use or privilege taxes or tax like charges, fees or similar liabilities, including governmentally or quasi-governmentally imposed charges levied upon Vendor as a result of Services provided to Locus… In the event that Locus provides Vendor with a direct payment permit, sale for resale exemption certificate, sales tax exemption certificate or other applicable exemption certificate, Vendor will not invoice the taxes covered by the exemption certificates, if such exemption certificate is applicable to the Services provided.

Sec. 15 – General

(b) This Agreement, together with all Appendixes (sic) and exhibits … represents (sic) the entire understanding of the Parties with respect to the subject matter hereof …

(d) While this Agreement is in effect each Party shall comply with all laws and regulations applicable to this Agreement and the Services.

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Integrated Telecommunications Inc., a New York corporation
**Dates**: December 18, 2003

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Carrier Service Agreement
**Vendor Party**: TotalTel Communications, Inc. ("Purchaser") a private corporation
**Dates**:

**Tax Provisions**:

Each party shall:

3. Carrier's Responsibilities:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

19. Merger: This Agreement . . . embodies the parties' complete and entire agreement with respect to the subject matter hereof.

**Contract Title**: Carrier service Agreement
**Vendor Party**: Telic Communications, Inc. d/b/a telic.net a Delaware Corporation
**Dates**:

**Tax Provisions**:

9. Taxes. All Services under this Agreement are provided exclusive of any applicable federal, state, local, or foreign taxes, duties, or charges imposed by any governmental authority. Such taxes, duties or charges shall be paid directly by the Party on whom the governmental entity imposes the tax.

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Nextcarrier Telecom inc. (Company), a New York, State corporation
**Dates**: April 6, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES

Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Reciprocal Carrier Telecommunications Agreement
**Vendor Party**: ITC, Inc., an Erie corporation
**Dates**: 1999

**Tax Provisions**:

7. Taxes

The parties acknowledge and understand that all charges stated in attached Service Schedules are computed exclusive of any applicable use, excise, gross receipts, sales and privilege taxes, duties, fees, or other taxes or similar liabilities (other than general income or property taxes). Such Additional Charges shall be paid by the party receiving service . . .

20. Entire Agreement

This Agreement consists of all the terms and conditions contained herein; in executed Service Schedules that are identified herewith; and in documents incorporated herein specifically by reference. This Agreement constitutes the complete and exclusive statement of the understandings between the parties . . .

**Contract Title**: Agreement Terms and Conditions
**Vendor Party**: Focal Communications Corporation, a Delaware Corporation
**Dates**: March 15, 2001

**Tax Provisions**:

7. CUSTOMER OBLIGATION

7.1 Customer shall conform to all regulatory requirements or laws promulgated by any local, state or federal agency having jurisdiction . . .

9. TERMS, CONDITIONS, PAYMENT AND DEPOSIT

9.1 . . . Customer acknowledges and understands that Focal computes all charges herein exclusive of any applicable federal, state or local use, excise, gross receipts, sales and privilege taxes, duties, fees or similar liabilities (other than general income or property taxes), whether charges are levied to or against Focal or Customer because of the service furnished to Customer ("Additional Charges"). Customer shall pay such Additional Charges in addition to all other charges provided for herein.

19. GENERAL

This Agreement constitutes the entire understanding between Focal and Customer . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Intone Networks, Inc., a NJ corporation
**Dates**: September 27, 2004

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Tricom USA, Inc., (TRICOM) a Delaware corporation
**Dates**: February 28, 2001

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XV. MISCELLANEOUS

B. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

J. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Global Access International, Inc. (GAII), a California corporation
**Dates**: February 22, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XVI. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: KDDI America, Inc. (KDDI), a New York corporation
**Dates**: February 23, 2004

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Carrier Service Agreement
**Vendor Party**: American Resources Group Inc., VoIP communications services
**Dates**: 1/15/04

**Tax Provisions**:

Exhibit A
Telecommunication Services

Telecommunications Services. . . . VOIP voice termination traffic . . . mobile calls only . . .

Prices and Billing. The rates per minute . . . Destination Philippines (Mobile) . . . Rate (US$) $0.145.

**Contract Title**: Reciprocal Services Agreement for Termination Services
**Vendor Party**: Teleworks Wholesale Services, LP ("Teleworks"), a Texas Limited Partnership
**Dates**: March 4, 2004

**Tax Provisions**:

SECTION 2. BILLING AND PAYMENT

2.3 TAXES, Fees, Etc. Unless Purchaser provides Vendor with a tax exemption certificate acceptable to the relevant governmental taxing authority, Purchaser agrees to pay applicable federal, state, or local taxes that are by the terms of the relevant statute, regulation, or ordinance imposed on it as the entity receiving Service under this Agreement ("Charges"). The prices included in the Price Annex do not include applicable Charges. . . . or (iii) unless

incorporated in the price quoted by Vendor to Purchaser for a Service, any tax or charge on services obtained by Vendor.

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: iOnosphere, Inc., a south Carolina corporation
**Dates**: June 15, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XV. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: TeleDanmark USA
**Dates**: May 13, 2000

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XIII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

I. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with

any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Wholesale Services Agreement (WSA)
**Vendor Party**: BellSouth Long Distance, Inc., ("BSLD"), a Delaware corporation
**Dates**: May 8, 2002

**Tax Provisions**:

6. PRICING; GENERAL CONDITIONS

6.4 Payment Procedure. . . . The cost of Services is exclusive of any applicable sales, sue, excise and like taxes, which shall be separately stated and included on each invoice.

6.7 Per Minute Charges. Rates are invoiced based on Per Minute Charges utilizing the billing increments as set forth in Exhibit 1.

6.10 Pricing Contingent on Tax Compliance. Rates and Promotional Discounts are contingent on Customer providing BSLD with certificates from appropriate taxing authorities exempting Customer from taxes that would otherwise be invoiced hereunder.

10. GENERAL. . . . (h) This WSA, the Supplements, and the Information Exchange Agreement between the parties, dated _____ (the "NDA"), each of which is hereby incorporated herein, represents the entire understanding between BSLD and Customer regarding the Services. . .

**Contract Title**: Com Tech International Service Agreement
**Vendor Party**: Com Tech International Corporation, ("CTIC") a Washington Corporation
**Dates**: July 11, 2000

**Tax Provisions**:

3. PAYMENT AND BILLING

3.3 Any applicable federal, state or local use, excise, sales or privilege taxes, duties or similar liabilities, chargeable to or against CTIC because of the Services provided to Client, shall be charged to Client and is payable to CTIC in addition to the regular charges under this Agreement unless Client provides CTIC with applicable tax exemption documentation. Client is solely liable for and hereby indemnifies and holds CTIC harmless form filing all applications, forms, reports, returns, statements, and other documents and information with and payment of all taxes and/or assessments to all local, county, state, federal, and other taxing authorities having jurisdiction with respect to any and all charges to Client's customers for the Services, including, without limitation, any governmental agency or authority in any foreign country.

11. ADDITIONAL PROVISIONS

11.3 This constitutes the entire Agreement between the parties . . .

EXHIBIT A

7- Above prices are in US funds and do not include applicable taxes and government fees, if any, as detailed in section 3.3 of the Agreement.

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Singapore Telecom USA, Inc. (ST-USA), a California corporation
**Dates**:

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency . . .

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Wholesale Solutions Switched Services Agreement
**Vendor Party**: Sprint Communications Company L.P. ("Spring")
**Dates**: September 16, 2003

**Tax Provisions**:

6. APPLICATION OF TARIFFS AND SPRING SCHEDULES; INTERSTATE ADJUSTMENT

6.3 Customer shall pay all applicable Tariff and Sprint Schedule charges including, . . .any taxes, levies, surcharges, or other costs that sprint is obligated to pay to any governmental entity or other third party, provided that (i) such obligation is imposed by valid and lawful legislation or regulation, and (ii) such obligation arises out of the use of Sprint's services.

11. CUSTOMER DUTIES, OBLIGATIONS AND RESPONSIBILITIES

11.2 Customer represents and warrants that it will comply with all applicable laws and applicable rules and regulations promulgated by federal and state regulatory agencies, . . .

11.3 Customer's failure to comply with paragraph 11.2 above will constitute a material breach of this Agreement . . .

33. ENTIRE AGREEMENT. This Agreement, including exhibits, Attachments, and the documents and instruments referred to herein, constitutes the entire understanding between the Parties relating to its subject matter.

**Contract Title**: Two Way Wholesale Interconnection Agreement
**Vendor Party**: Storm telecommunications, Inc., a corporation of Delaware
**Dates**:

**Tax Provisions**:

6. CHARGES, RATES AND BILLING

6.7 The Charges specified in this Agreement are exclusive of any applicable federal, state, or local taxes, surcharges, or similar fees, including but not limited to any sales, use, gross receipts tax or value added tax ("Taxes"), which, if due and owing, will be added to the invoice and charged at the then prevailing rate. If either Party is exempt from any Taxes for Services resold to its customers, then upon presentation of a valid resale certificate, the other Party shall not charge the exempt Party any such Taxes.

**Contract Title**: Carrier Services Agreement
**Vendor Party**: CTI (Communication Technologies Inc.)
**Dates**: June 5, 2002

**Tax Provisions**:

9. PAYMENTS FOR SERVICE:

9.4 Each PARTY will provide the other with a valid tax exemption form to exempt (under applicable law), from taxes that would otherwise be paid by a PARTY to the other. Each PARTY will invoice the other for taxes (other than income taxes payable by either PARTY) that are not covered by tax exemption certificate properly filed with the other PARTY.

21. ENTIRE AGREEMENT: this Agreement, together with the attached Annexure(s) or Amendment(s), represents the entire agreement of the PARTIES with respect to the subject matter hereof . . .

1. . . . sign the contract? Henry Park
Director, hpark@locus.net, . . .

2. . . . Accounts Payable contact? Iksoo Lee
Billing Manager, iksoolee@locus.net, . . .

3. . . . Provisioning contact? Dillon Kim or Jamie Kim
Manager – Carrier Operations, Dillon@locus.net, . . .
Provisioner, jamiekim@locus.net, . . .

4. . . . technical contact at your switch site? J.P. Lee
Senior Manager – Switch & Network, jp@locus.net, . . .

5. . . . on-going rates? Henry Park

6. . . . on-going rate amendments . . . ? Andy Jeon
Manager – Carrier Operations, jhseok@locus.net or rates@locus.net

7. . . . routing issues? Henry Chung
Quality Control Supervisor, henry@locus.net, . . .

**Contract Title**: Fusion Telecommunications Carrier Service Agreement
**Vendor Party**: Fusion Telecommunications
**Dates**: March 1, 2004

**Tax Provisions**:

**MISSING PAGES**

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: High vista Enterprises, Inc., a Florida corporation
**Dates**: November 17, 2005

**Tax Provisions**:

**MISSING PAGES**

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Discoverytel Inc. (Company), a Delaware corporation
**Dates**: October 13, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Reciprocal Carrier Services Agreement
**Vendor Party**: WorldLink Telecom, a New Jersey corporation
**Dates**: January 3, 2001

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVI. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Services Agreement
**Vendor Party**: Intermetro Communications, Inc., a California corporation
**Dates**: September 27, 2005

**Tax Provisions**:

5. TAX EXEMPTION CERTIFICATE.

Should CUSTOMER claim any exemption of any sales, use, or other tax, then CUSTOMER must provide such proof of exemption to PROVIDER. In no event shall PROVIDER be liable for any taxes due by CUSTOMER and CUSTOMER will indemnify PROVIDER if any such claim for taxes is made. PROVIDER will invoice CUSTOMER for taxes that are not covered by a valid tax exemption certificate properly filed with PROVIDER.

23. ENTIRE AGREEMENT.

This Agreement, including all Schedules and attachment(s) attached hereto, constitutes the entire agreement between the Parties with respect to the subject matter hereof . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Comsolo (Company), a CA Limited Liability corporation
**Dates**: July 22, 2004

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Horizon Telecom Network, LLC, a Nevada limited liability corporation
**Dates**: March 29, 2004

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: PoxTelecom, Inc. (Pox), a Texas corporation
**Dates**: October 5, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES

Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Master Service Agreement
**Vendor Party**: Grande Communications Networks, Inc., a Delaware corporation
**Dates**: June 30, 2003

**Tax Provisions**:

No direct tax provision

16. Subject to Laws. This Agreement is subject to, and Customer agrees to comply with, all applicable federal, state and local laws, and regulations, rulings and orders of governmental agencies, including, but not limited to, the Communications Act of 1934, the Telecommunications Act of 1996, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: International Carrier Services, Inc., a Delaware corporation
**Dates**: September 1, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Telecommunications Service Agreement
**Vendor Party**: New Global telecom, Inc., a Delaware corporation
**Dates**: 10th day of 2003

**Tax Provisions**:

6. Charges and Payment Terms.

B. Taxes. Customer acknowledges and understands that NGT computes all charges herein exclusive of any applicable federal, state or local use, excise, gross receipts, sales and privilege taxes, duties, fees or similar liabilities, whether charged to or against NGT or Customer ("Additional Charges"). Unless Customer provides NGT with a properly executed Certificate of Exemption for all foreign, federal, state, country, and local taxes and fees (if any), Customer shall pay such Additional Charges in addition to all other charges provided for herein.

26. Entire Agreement

This Agreement and the Service Schedule(s) constitutes the entire Agreement between the Parties as to the subject matter hereof . . .

**Contract Title**: Reciprocal Carrier Service Agreement
**Vendor Party**: Globaltron Communications Corporation ("GCC"), a Delaware corporation
**Dates**: April 5, 2000

**Tax Provisions**:

7. Taxes.

The Parties acknowledge and understand that all charges stated in attached Exhibits are computed exclusive of any applicable use, excise, gross receipts, sales and privilege taxes, duties fees or other similar liabilities (other than general income or property taxes). Such Additional Charges shall be paid by the party receiving services in additional to all other charges provided for herein. All applicable taxes, duties, fees, or other liabilities shall be billed to the appropriate party by the other party. Applicable tax exemption documentation shall be provided by each party. Each party is solely liable for and hereby indemnifies and holds the other party harmless from filing all applications, forms, reports, returns, statements, and other documents and

information with any payment of all taxes and/or assessments to all local, country, state, federal, and other taxing authorities having jurisdiction with respect to any and all charges to each party's end users or customers for the services, including without limitation, any governmental agency or authority in any foreign country.

20. Entire Agreement.

This Agreement consists of all of the terms and conditions contained herein; and in executed Service Schedules that are identified herewith; and in documents incorporated herein specifically by reference. This Agreement constitutes the complete and exclusive statement of the understandings between the Parties . . .

**Contract Title**: Reciprocal Telecommunications Agreement
**Vendor Party**: TeleNova Communications Corporation, a Delaware Corporation
**Dates**: May 19, 2000

**Tax Provisions**:

7. Taxes. The Parties acknowledge and understand that all charges stated in attached Exhibits are computed exclusive of any applicable use, excise, gross receipts, sales and privilege taxes, duties, fees or other taxes or similar liabilities Such Additional Charges shall be paid by the Party receiving Service in addition to all other charges provided for herein.

19. General.

19.4. Entire Agreement. This Agreement consists of all the terms and conditions contained herein; in executed Exhibits that are identified herewith; and in documents incorporated herein specifically by reference. This Agreement constitutes the complete and exclusive statement of the understandings between the Parties and supersedes all proposals and prior agreements . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Fonetel, Inc. (Company), a New York State corporation
**Dates**: February 17,2004

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: International Voice Termination Agreement
**Vendor Party**: T-Systems USA, Inc., corporation, Delaware
**Dates**: May 2002

**Tax Provisions**:

This has a hint of pass thru taxes

5. Pricing and billing

5.6 Carrier acknowledges and agrees that Charges for certain Services hereunder may not include certain Taxes (as hereinafter defined), payment of which shall be the obligation of Carrier. Such Taxes shall be separately set forth on the Invoices (as defined herein) and shall be paid by Carrier at the same time as all other Charges set forth on the Invoices. For purposes of this Agreement, "Tax" or "Taxes" shall mean any and all applicable national, federal, state and local taxes, including, without limitation, ass use, sales, value- added, surcharges, excise, franchise, property, commercial, gross receipts, license, privilege or other similar taxes, levies, surcharges, duties, fees, or other tax-related surcharges whether charged to or against T-Systems USA, with respect to the Services or underlying facilities provided by T-Systems USA, as well as any other imposition by any governmental authority which has the effect of increasing T-Systems USA's cost of providing the Services or the underlying facilities. If Carrier believes that it should be exempt from the application and collection of certain Taxes, it shall provide T-Systems USA with an appropriately completed and valid Tax exemption certificate or other evidence acceptable to T-Systems USA that Carrier is not subject to such Taxes. T-Systems USA shall not be entitled to issue any exemption, credit or refund of any Tax payment for usage prior to Carrier's submission of such acceptable Tax exemption evidence.

14. Miscellaneous

14.6 This Agreement represents the entire understanding between the Parties in relation to the matters herein . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: CM TEL (USA) LLC (Company, a Delaware corporation

**Dates**: June 7, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVI. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Reciprocal Agreement
**Vendor Party**: Roadway Communications, Inc., CA
**Dates**: January, 2005

**Tax Provisions**:

NO TAX PROVISION

1. Service and P.O.P.

1.3 The parties shall comply with the requirements of . . . any and all local state or federal governmental agencies or regulatory authorities . . . having jurisdiction . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Global Net Holdings, Inc. (Company), a Delaware corporation
**Dates**: April 24, 2006

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Computer-Tel, Inc. (Computer-Tel), a Nevada corporation
**Dates**: September 27, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Innocom Telecom, LLC (Company), a California corporation
**Dates**: August 1, 2003

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES

Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: RAI Telecom, Inc. (Company), a Delaware corporation
**Dates**: October 12, 2005

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XV. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Agreement No. US 03-03-00069/CSS
**Vendor Party**: France Telecom Long Distance USA, LLC, a Delaware limited liability company
**Dates**: March 3, 2003

**Tax Provisions**:

11. Miscellaneous

(g) entire Agreement. The Agreement constitutes the entire agreement between the Parties with respect to the subject matter herein . . .

Appendix 3: Service Charges, Billing Procedure and Payment Terms

A.3.2 General terms of payment

a) All Service Charges are in the currency described in the Service Order and exclude all sales taxes (including, but not limited to, VAT) and/or other applicable governmental fees, unless otherwise indicated. . . .

b) All expenses arising from payments (e.g. taxes, governmental fees, clearance fees, and bank charges) that are directly attributable to and billed in the country of Customer or by intermediaries shall be the payment responsibility of and be borne by Customer. . . .

c) If Customer is required by law to deduct or withhold any taxes from any amounts payable under this Agreement such amounts shall be increased as necessary so that Supplier receives an amount equal to the sum it would have received had no such deduction or withholding been made. Customer shall provide Supplier with its tax identification number and applicable exemption certificate within fifteen (15) Working Days of the Effective Date.

**Contract Title**: Amendment No. 4 to Broadwing Master Service Agreement
**Vendor Party**: Boadwing Communications Services Inc., a Delaware corporation
**Dates**: June 28, 2001

**Tax Provisions**:

Incomplete copy

1. Exhibit A, Taxes on Telecommunications Services, of the Terms and Conditions shall be modified by adding Page 3, Universal Service Charge Waiver Certificate, attached hereto.

**Contract Title**: Network Carrier Services Agreement
**Vendor Party**: Dynalink Telecom, Inc. (hereinafter referred to as "Dynalink"), California
**Dates**: March 9, 2001

**Tax Provisions**:

5. TAXES

Purchaser upon the execution of this Agreement shall provide Dynalink with a properly executed Certificate of Exemption for all foreign, federal, state, county and local taxes and fees (if any) and shall be responsible for the collection and payment of all applicable taxes and fees to the relevant governmental authorities.

**Contract Title**: Telecommunications Service Agreement
**Vendor Party**: EDCO/USA LLC, a Limited Liability Company organized and existing under the laws of the State of Delaware
**Dates**: October 15, 2000

**Tax Provisions**:

7. Taxes

The Parties acknowledge and understand that all charges stated in the attached Service Schedules are computed exclusive of any applicable use, excise, gross receipts, sales and privilege taxes, duties, fees, or other taxes or similar liabilities (other than general income or property taxes). Such additional charges shall be paid by the party receiving services in addition to all other charges provided herein.

21. Entire Agreement

This Agreement, together with any and all executed Service Schedules, constitute the complete and exclusive statement of the understandings between the Parties and supersedes all proposals and prior agreements (oral or written) between the Parties relating to Service provided hereunder. . . .

**Contract Title**: Carrier Services Agreement
**Vendor Party**: Forval International telecom, Inc. New Jersey corporation ("Forval")
**Dates**: June 14, 2000

**Tax Provisions:**

Section 6. Billing Charges and Payment Terms:

6.3 Taxes. Customer acknowledges and understands that all charges stated in Service Schedules are computed by FORVAL exclusive of any applicable use, excise, gross receipts, sales and privilege taxes, duties, fees or other taxes or similar liabilities (other than general income or property taxes), including but not limited to those related to universal service or pursuant to similar regulatory, federal or state laws, whether charged to or against FORVAL or Customer because of the Service furnished to Customer ("Additional Charges"). Such Additional Charges shall be invoiced by FORVAL, and unless Customer is exempt therefrom, paid by Customer, in addition to all other charges provided for herein.

Section 13. Taxes and Assessments:

13.1 Taxes. Customer agrees that FORVAL shall not be responsible for the collection and remittance of any governmental assessments, surcharges or fees pertaining to Customer's resale of the Services.

Section 19. Entire Agreement and Integration

19.1 Entire Agreement. This Agreement and all Exhibits, Schedules and other attachments incorporated herein, represent the entire agreement between the Parties with respect to the subject matter hereof . . .

**Contract Title**: Reciprocal Carrier Service Agreement
**Vendor Party**: Fusion Telecommunications International, Inc., a Delaware corporation
**Dates**: February 20, 2004

**Tax Provisions**:

Rates and Billing

4.6 All charges set forth in Appendix B for Services provided pursuant to this Agreement are exclusive of sales, use, excise or privilege taxes or tax-like charges, fees or similar liabilities. The buying Party will pay all applicable sales, use, excise, privilege or similar charges, except any taxes or tax-related surcharges determined by the selling Party's net worth, income, franchise or property (which shall be borne by the selling Party). In the event the buying Party provides the selling Party with a direct payment permit, sale for resale exemption certificate, sales tax exemption certificate or other applicable exemption certificate, selling Party will not invoice the taxes covered by the exemption certificate(s), if and for so long as such exemption certificate is applicable to the Services provided.

14. Severability: This Agreement is made expressly subject to all present and future valid orders and regulations of any regulatory body having jurisdiction over the subject matter hereof and to the laws of the United States of America, any of its states, or any foreign governmental agency having jurisdiction. . . .

21. Merger: This Agreement (including its exhibits) . . . embodies the Parties' complete and entire agreement with respect to the subject matter hereof. . . .

**Contract Title**: Reciprocal Services Agreement
**Vendor Party**: Geotel International, LLC., a Florida Company
**Dates**: October 5, 2004

**Tax Provisions**:

4. Tax Exemption Certificate.

Should a Party claim exemption from any value-added, sales, use, or other tax, the Party shall provide documented proof of such exemption to the other Party. It is the responsibility of the Party claiming tax-exempt status to ensure its exempt status, and the proof thereof, remains current. In no event shall the other Party be liable for any taxes due by the tax-exempt Party and said Party shall indemnify the other Party if any such claim for taxes is made. Neither Party shall be obligated to issue any exemption, credit or refund of any tax payment for usage prior to the other Party's submission of acceptable exemption documentation.

21. Entire Agreement.

This Agreement, including all attachments, constitutes the entire agreement between the Parties with respect to the subject matter hereof . . .

**Contract Title**: Carrier Service Agreement
**Vendor Party**: Global Crossing Bandwidth, Inc., California corporation
**Dates**: May 19, 2000

**Tax Provisions**:

6. Taxes and Assessments:

Locus is responsible for the collection and remittance of all governmental assessments, surcharges and fees pertaining to its resale of the Services (other than taxes on Global Crossing's net income) (collectively, "Taxes"). Locus shall provide Global Crossing with, and maintain, valid and properly executed certificate(s) of exemption for Taxes, as applicable.

14. Integration:

This Agreement and all Exhibits, schedules and other attachments incorporated herein, represent the entire agreement between the Parties with respect to the subject matter hereof . . .

19. Compliance with Laws:

During the term of this Agreement, the Parties shall comply with all local, state and federal laws and regulations applicable to this Agreement and to their respective business. . . .

**Contract Title**: Reciprocal Carrier Service Agreement
**Vendor Party**: iBsis Global, Inc., a Delaware corporation
**Dates**: May 1, 2005

**Tax Provisions**:

3. Settlement and Payment

3.7 The charges specified in this Agreement are exclusive of any applicable use, excise, gross receipts, sales and privilege tax, duties, fees, surcharges or any other applicable tax or liability. Such additional tax or charge shall be paid by the responsible Party in accordance with applicable laws and regulations. Any applicable sales tax exemptions must be certified in writing to iBasis and supported by appropriate documentation. Neither Party shall be liable for any taxes based on the other Party's net income

5. Regulations. This Agreement is made expressly subject to all present and future valid orders and regulations of any regulatory body having jurisdiction over the subject matter hereof and to the laws of the United States of America, any of its states, and any foreign governmental agency having jurisdiction.

14. Entire Agreement and Understanding. This Agreement (including its appendices) constitutes the entire understanding and agreement between the Parties . . .

**Contract Title**: Service Agreement
**Vendor Party**: IDT Domestic Telecom, Inc.; a Delaware corporation
**Dates**: January 25, 2005

**Tax Provisions**:

II. Payment Terms

2.2 Taxes All Services under this Agreement are being provided exclusive of any applicable taxes, duties, and/or charges imposed by any governmental authority. Such applicable taxes, duties, or and/or charges imposed upon either Party shall be paid directly to the proper governmental authority by each Party, or as otherwise provided pursuant to Section 4.5 of this Agreement.

IV. Liability and Indemnification

4.5 Indemnity. . . .

The Company shall timely file all reports and pay all sums due regarding regulatory and governmental obligations, including without limitation, Universal Service Fund contributions, access charges regulatory fees, and state local and federal taxes with respect to services provided by the Company to its customers. The Company shall indemnify, defend and hold IDT harmless from any claim, liability, penalty or obligation arising out of Customer's failure to file such reports or the non-payment of any charges, taxes or contributions that are assessed upon any services provided by the Company to its customers or upon any Services provided by IDT, or any Services provided hereunder. . . .

VIII. Miscellaneous

8.12 Entire Agreement. This Agreement, including any exhibits attached hereto, sets forth the entire agreement and understanding of the Parties hereto . . .

**Contract Title**: Services Agreement
**Vendor Party**: ITXC CORP, a Delaware corporation
**Dates**: November 30, 2000

**Tax Provisions**:

13. Government or Other Regulation. Each Party is independently responsible for ensuring that its activities (including the offering or providing of services or facilities) shall comply with applicable laws and government or other regulation. . . .

18. Taxes. Each Party is responsible for complying with and paying all taxes and duties assessed by government and equivalent authorities with jurisdiction over its activities. If applicable, the Company agrees that ITXC may adjust the Settlement (as defined in the Services Addenda) amount to ensure any applicable taxes are borne by the appropriate party.

25. Entire Agreement; Amendments; Severability. This Agreement constitutes the entire understanding and agreement between the Parties . . .

**Contract Title**: Telecommunications Agreement
**Vendor Party**: Latin Node, Inc., a Florida corporation
**Dates**: March 8, 2004

**Tax Provisions**:

7. Taxes

The parties acknowledge and understand that all charges stated in attached Service Schedules are computed exclusive of any applicable use, excise, gross receipts, sales and privilege taxes, duties, fees, or other taxes or similar liabilities (other than general income or property taxes). The party receiving service in addition to all other charges provided herein shall pay such Additional Charges.

20. Entire Agreement

. . . This Agreement constitutes the complete and exclusive statement of the understandings between the parties . . .

**Contract Title**: On-Net Service Agreement
**Vendor Party**: MCI WorldCom Communications, Inc.

**Dates**: September 24, 2001

**Tax Provisions**:

Definitions

1.5 "Usage Charges" . . . Usage Charges exclude the following:

(i) Taxes and tax related surcharges;

Terms and Conditions

The rates set forth in this Agreement do not include, . . . taxes, tax-related or tax-like surcharges; . . .. Customer agrees to pay all these additional charges, to the extent applicable. . . .

Tariff and Guide: . . . MCI WorldCom may adjust its rates and charges or impose additional rates and charges in order to recover amounts it is required or permitted by governmental or quasi-governmental authorities to collect from or pay to others in support of statutory or regulatory programs ("Governmental Charges"). . . .

Entire Agreement: This Agreement, (and any attachments or amendments made hereto) together with the tariffs, constitutes the entire agreement between the parties . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Novolink Communications, Inc. (Novolink), a Texas corporation
**Dates**: August 9, 2001

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Telecommunication Services Agreement
**Vendor Party**: NovaTel, Ltd., a Texas limited partnership
**Dates**: July 16, 2003

**Tax Provisions**:

2. Payment and Charges:

2.6 Taxes. Customer acknowledges that NovaTel's invoices are charged exclusive of any taxes or fees. Concurrent with or prior to execution of Agreement, Customer shall provide NovaTel with a properly executed certificate of exemption for all foreign, federal, state, county, and local taxes and fees (if any) per Exhibit "C." Customer shall be responsible for the collection of all applicable end-user taxes and fees and the remittance of such taxes and fees to the relevant governmental authority. Customer shall indemnify, hold harmless and defend NovaTel from and against any and all actions, suits, proceedings, administrative charges, liens, liabilities, claims, assessments, fees, interest, and penalties arising out of or in connection with Customer's failure to collect and/or remit, in a timely manner, any tax or fee.

10. Entire Agreement: This Agreement (including its exhibits) supersedes and merges . . . and embodies the Parties' complete and entire agreement with respect to the subject matter hereof. . . .

14. Regulations: This Agreement is made expressly subject to all present and future valid orders and regulations of any regulatory body having jurisdiction over the subject matter hereof and to the laws of the United States of America . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: ONSEnet America, Inc. (ONSEnet), a California corporation
**Dates**: November 26, 2002

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Global Bandwidth Services Agreement
**Vendor Party**: Primus Telecommunications, Inc., Delaware
**Dates**: March 26, 2003

**Tax Provisions**:

4. Tax Exemption Certificate.

CUSTOMER shall pay any and all applicable foreign, national, provincial, state and/or local taxes, including without limitation, all use, sales, value-added, surcharges, excise, franchise, property, commercial, gross receipts, license, privilege or other similar taxes, levies, surcharges, duties, fees, or other tax0related surcharges, whether charged to or against PRIMUS or CUSTOMER, with respect to the Services ("Taxes"). Should CUSTOMER claim an exemption from any such Taxes, CUSTOMER must provide PRIMUS with official documented or certified roof of such exemption. It is CUSTOMER'S responsibility to ensure its exempt status, and the proof thereof, remains current. In no event shall PRIMUS be liable for any Taxes due by CUSTOMER and CUSTOMER shall indemnify PRIMUS if any such claim for Taxes is made. PRIMUS will invoice CUSTOMER for Taxes not covered by a valid Tax exemption certificate that is properly filed with PRIMUS.

23. Entire Agreement. This Agreement, along with Attachment A, represents the entire understanding between the Parties in relation to the matters dealt with herein . . .

**Contract Title**: Express Services Agreement
**Vendor Party**: Qwest Communications Corporation
**Dates**: September 28, 2001

**Tax Provisions**:

4. Services, Rates and Terms. . . . The rates do not include Taxes, access or access related charges . . .

25. Entire Agreement. This Agreement, together with all Addenda and Service Exhibits, constitutes the entire agreement between the Parties with respect to the subject matter hereof . . .

Addendum 1
Definitions:

"Taxes" means any and all applicable foreign, federal, state and local taxes, including without imitation, all use, sales, value-added, surcharges, excise, franchise, property, commercial, gross receipts, license, privilege or other similar taxes, levies, surcharges, duties, fees, or other tax-related surcharges, whether charged to or against Qwest or Customer, with respect to the Services or underlying facilities provided by Qwest.

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Sonera Corporation U.S. (Sonera) Delaware corporation
**Dates**: August 17, 2001

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Startec Carrier Services Agreement
**Vendor Party**: STARTEC Global Communications Corporation, Maryland corporation
**Dates**: April 12, 1998

**Tax Provisions**:

9. Payments for Service:

9.3 Customer will provide STARTEC with a valid tax exemption for to exempt Customer, under applicable law, from taxes that would otherwise be paid by Customer. STARTEC will invoice Customer for taxes (other than income taxes payable by STARTEC) that are not covered by tax exemption certificate properly filed with STARTEC.

21. Entire Agreement: This Agreement, together with the attached Annexure(s), represents the entire agreement of the Parties with respect to the subject matter hereof . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Progressive telecom, Inc., MD corporation
**Dates**: April 5, 2002

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Reciprocal International Carrier Service Agreement
World Link Service
**Vendor Party**: Swisscom North America, Inc., Delaware
**Dates**: August 17, 2001

**Tax Provisions**:

5. Pricing and Billing

5.5 All rates and other charges due hereunder are exclusive of all applicable taxes, including value added tax, sales taxes, and duties or levies imposed by any authority, government or government agency (except income tax or other corporate taxes attributable to either Party), all of which shall be paid promptly when due, and each Party agrees to indemnify and hold the other harmless from any liability therefore.

14. Miscellaneous

14.6 This Agreements represents the entire understanding between the Parties in relation to the matters herein . . .

**Contract Title**: Bilateral Services Agreement
**Vendor Party**: Telecom Italia Sparkle of North America, Inc. ("TISNA"), a New York corporation
**Dates**: August 8, 2006

**Tax Provisions**:

The Parties acknowledge and understand that all charges … for the Services provided pursuant to this Agreement are exclusive of sales, use or privilege taxes or tax like charges, fees or similar liabilities, including governmentally or quasi-governmentally imposed charges levied upon the Providing Partyr as a result of Services provided to the Receiving Party. Such additional charges shall be paid by the Receiving Party at the same time and in addition to all other charges provided for herein, except that any taxes or tax-related surcharges determined by the Providing Party's income, net worth, franchise or property shall be borne solely by the Providing Party. In the event that the Receiving Party provides the Providing Party with a valid direct payment permit, sale for resale exemption certificate, sales tax exemption certificate or other applicable exemption certificate acceptable to the Providing Party, the Providing Party will not invoice the taxes covered by the exemption certificate(s), if such exemption certificate is applicable to the Services provided. Where the Providing Party becomes liable for any penalties or interest as a result of the late payment of any tax due hereunder due to the Receiving Party's failure to comply with the terms of this Agreement or its obligations under any tax law, then the Receiving Party must pay an additional amount equal to the penalties and interest.

13. General.

(a) This Agreement, including all Appendixes and exhibits attached hereto, constitutes the entire agreement between the Parties with respect to the subject matter contained herein . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Telecom New Zealand USA Limited (TNZ USA), Delaware corporation
**Dates**: June 28, 2001

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Reciprocal Telecommunications services Agreement
**Vendor Party**: Teleglobe USA Inc., Delaware corporation
**Dates**: October 16, 2002

**Tax Provisions**:

6. NET OF TAXES. All pricing for Services and other charges due hereunder are exclusive of all applicable taxes, including value added tax, sales taxes, duties, fees, levies or surcharges (including where applicable any Universal Service Fund or similar surcharges) imposed by, or pursuant to the laws, statutes or regulations of any governmental agency or authority, all of which shall be the sole responsibility of each arty and paid promptly when due by each Party, and each Party agrees to indemnify and hold the other Party harmless from any liability therefore. All amounts payable by the Parties under this Agreement shall be made without any deduction, set-off or counterclaim and, except to the extent required by any law or regulation, free and clear of any deduction or withholding on account of any tax, duty or other charges of whatever nature imposed by any taxing or governmental authority. If a Party is required by any law or regulation to make any such deduction or withholding such Party shall, together with the relevant payment, pay such additional amount as will ensure that the other Party actually receives and is entitled to retain, free and clear of any such deduction or withholding, the full amount which it would have received if no such deduction or withholding had been required. The Party making the payment shall make the required deduction or withholding, shall pay the amount so deducted or withheld to the relevant government authority and shall promptly provide the other Party with evidence of such payment.

18. ENTIRE AGREEMENT. This Agreement, including the relevant Annexes hereto represents the entire agreement between the Parties . . .

**Contract Title**: International Voice Agreement
**Vendor Party**: Telia International Carrier, Inc., incorporated, Delaware
**Dates**: April 1, 2002

**Tax Provisions**:

4. Pricing and Billing

4.6 All rates and other charges due hereunder are exclusive of all applicable use, excise, gross receipts, sales, value added and privilege taxes, duties, fees or levies imposed by any authority, government or government agency (except income tax or other corporate taxes attributable to either Party), all of which shall be paid promptly when due. Each Party agrees to indemnify and hold the other harmless the other Party from any liability arising from the indemnifying Party's failure to pay taxes when due. Each Party may provide the other Party with a valid tax exemption certificate.

13. General

13.7 . . . This Agreement represents the entire understanding between the Parties in relation to the matters herein . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Touch Tone Communications of NJ, Inc. (Company), New Jersey corporation
**Dates**: January 12, 2001

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: General Terms and Conditions for Carrier Agreements
**Vendor Party**: Wavecrest Communications LLC, a Delaware corporation
**Dates**: June 10, 2003

**Tax Provisions**:

VII. CARRIER'S RESPONSIBILITIES
Each party shall:

A. Be responsible for and pay any and all local, state, or federal taxes or charges in the nature of taxes imposed by any governmental authority or regulatory agency in addition to the charges required by either party pursuant to this Agreement.

XVII. MISCELLANEOUS

C. Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the transactions contemplated herein . . .

H. Additional Terms: This is a carrier-to-carrier Agreement subject to Section 211 of the Communications Act of 1934, as amended. Each party is responsible for and shall comply with any and all legal and regulatory requirements with respect to the other party's use and resale of the Services, . . .

**Contract Title**: Telecommunications Services Agreement
**Vendor Party**: WilTel Communications, LLC, a Delaware limited liability company
**Dates**: October 9, 2003

**Tax Provisions**:

9. Taxes and USF Charges. (a) If any local, state, national, international, public or quasi-public governmental entity or foreign government or its political subdivision imposes any taxes (excluding taxes based on WilTel's net income or capital or any property taxes), fees, surcharges, or other charges or impositions on WilTel as a result of WilTel's sale of Services or Customer's use of Services, Customer shall pay any such impositions ("Additional Charges") and indemnify WilTel from any liability or expense associated with the Additional Charges. (b) In addition, if Additional Charges are assessable to support the federal Universal Service Fund ("USF") or any similar local, state, national, international, or foreign fund, WilTel may elect to calculate and charge Customer in accordance with applicable regulations of the government authority having jurisdiction (USF Charges"), unless Customer is paying such Additional Charges directly or is otherwise exempt (as indicated by Customer in Appendix B). To the extent USF Charges apply to Services, Customer shall also pay WilTel an administrative fee equal to one percent (1%) of the total WilTel charges for such Services.

22. Miscellaneous. . . . (h) This TSA, including the General Terms and appurtenant appendices, Service Schedules and Service Orders (Including Quotes referenced therein), any applicable tariff and WilTel's AUP Website, comprise all of the terms and conditions of the agreement between the parties relating to the Services and constitute the complete and exclusive statement of the understanding between the parties . . .